UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANE WILSON,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. EDCV 11-1023 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Shane Wilson ("Wilson") filed this action on July 21, 2011. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on August 3 and 16, 2011. (Dkt. Nos. 9-10.) On March 21, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

## I.

## PROCEDURAL BACKGROUND

On July 9, 2008, Wilson filed applications for disability insurance benefits and supplemental security income benefits, alleging an onset date of October 1, 2002. Administrative Record ("AR") 10, 112-28. The applications were denied initially and upon reconsideration. AR 57-60. Wilson requested a hearing by an Administrative Law Judge (ALJ). AR 76. On June 17, 2010, the ALJ conducted a hearing at which Wilson and a friend testified. AR 42-56. On August 5, 2010, the ALJ issued a decision denying benefits. AR 7-20. On June 3, 2011, the Appeals Council denied the request for review. AR 1-3. This action followed.

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Wilson met the insured status requirements through June 30, 2011. AR 12. He had a severe impairment of the musculoskeletal system. *Id.* Wilson had the residual functional capacity ("RFC") to perform "a range of heavy exertional work" and was "limited to lifting and/or carrying 50 pounds frequently and 100 pounds occasionally." AR 15. He could perform his past relevant work as a cashier and stocking clerk as generally performed. AR 19-20.

### C. Step Four of the Sequential Analysis

Wilson contends the ALJ was required to obtain vocational expert testimony.

"At step four of the sequential analysis, the claimant has the burden to prove that [s]he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'" *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This is done by looking at the 'residual functional capacity and the physical and mental

demands' of the claimant's past relevant work." *Id.* at 844-45; *see also* 20 C.F.R. §§ 404.1520(e) & 416.920(e). When an ALJ relies on the DOT for a job description of a claimant's past relevant work, the ALJ must "definitively explain" any deviation between the Dictionary of Occupational Titles ("DOT") and the claimant's noted limitations. *Pinto*, 249 F.3d at 847.

Wilson argues that, based on his severe impairment of the musculoskeletal system, "it is reasonable to conclude that plaintiff suffers from severe pain as a result of this impairment and has a nonexertional limitation of pain." JS at 3. Therefore, Wilson argues the ALJ was required to obtain vocational expert testimony.

It cannot simply be assumed, based on a finding of a severe impairment at step two, that Wilson has a nonexertional limitation of pain. "The mere existence of an impairment is insufficient proof of a disability. 'A claimant bears the burden of proving that an impairment is disabling.' The applicant must show that he is precluded from engaging in not only his 'previous work,' but also from performing 'any other kind of substantial gainful work' due to such impairment." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citations omitted). Step two of the sequential analysis is a de minimis screening device. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). At step two "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Id.* at 686-87 (emphasis in original, citation omitted). By contrast, step four seeks to determine whether a claimant can perform her past relevant work. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

The Ninth Circuit has explained the difference between step two and the analogous step five determination of whether there is a significant number of jobs in the national economy that the claimant can perform. The step two and step five determinations "require different levels of severity of limitations such that the

satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). This reasoning applies equally to the difference between the step two and the step four determinations.

With respect to the issue of pain, Wilson does not challenge the ALJ's findings based on the relevant medical records and his assessment of the credibility of Wilson and the lay witnesses. Wilson argues that his applications also alleged asthma, hypertension, mood disorder and attention deficit hyperactivity disorder, which are "non-exertional limitations and findings that would affect what type of job in the national economy that plaintiff was capable of performing." JS at 4.

However, the ALJ found that Wilson's asthma appeared to be controlled with medication and did not require any limitations. AR 13. Similarly, the ALJ found that Wilson's hypertension was often within normal limits or only slightly elevated, and did not require functional limitations. *Id.* With respect to Wilson's claimed mental impairments, the ALJ found no limitation as to activities of daily living, mild limitation in social functioning and concentration, persistence or pace, and no episodes of decompensation. AR 13-14. The ALJ found that Wilson's medically determinable mental impairments were, therefore, not severe and did not result in functional limitations. AR 14. Of these findings, Wilson challenges only the ALJ's rejection of Dr. Benson's psychiatric opinions. For the reasons set forth below, the ALJ's rejection of Dr. Benson's opinions is supported by substantial evidence.

Accordingly, Wilson's argument that the ALJ was required to obtain vocational expert testimony to assess nonexertional limitations must be rejected. Wilson further argues that the ALJ failed to obtain vocational expert testimony to classify his past relevant work. The ALJ properly relied upon Wilson's testimony and statements of record to find that Wilson's past relevant work was a cashier

and stocking clerk. AR 19, 161. Wilson does not identify any error in the ALJ's classification and the court has not discerned any such error.

### D. Treating Psychiatrist

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn,* 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Wilson contends the ALJ improperly rejected the opinion of Dr. Benson, a psychiatrist from the Parole Outpatient Clinic. Wilson was paroled on June 29, 2008. AR 130. On November 5, 2008, Dr. Benson filled out a one-page form. Dr. Benson opined that Wilson was unable to work at all until possibly June 2011. AR 369. Wilson suffered from "disabling anxiety, depression, [and] ADHD", and his prognosis was "guarded." *Id.* On March 4, 2010, Dr. Benson wrote that Wilson is "fully disabled from a psychiatric point of view. He would miss > 7-10 days per month of work." AR 406. Dr. Benson opined that Wilson was psychiatrically disabled for a minimum of 36 months. *Id.*

The ALJ found that Dr. Benson's opinions had no probative value because (1) his opinions "include[d] only conclusions regarding functional limitations

6

without any rationale for those conclusions"; and (2) there was no objective evidence to support those functional limitations. AR 14.

A treating physician's opinion as to the ultimate determination of disability is not binding on an ALJ. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). The existence of disability "is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity" and is reserved to the Commissioner. *Id.*

Dr. Benson's opinions are not supported by any treatment notes, clinical findings or psychological test results. An ALJ may discount a treating physician's opinion on that basis. *Orn*, 495 F.3d at 631. "'[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ gave great weight to the opinions of the examining psychiatrist, who examined Wilson on September 22, 2008 and April 2, 2009. AR 14, 337-43, 370-76. An examining physician's opinion constitutes substantial evidence when, as here, it is based on independent clinical findings. *Orn*, 495 F.3d at 631. On April 2, 2009, the psychiatrist diagnosed ADHD and bipolar disorder or mood disorder, not otherwise specified. AR 375. Based on the unremarkable mental status examination, he opined that Wilson had "no functional limitations from a psychiatric standpoint." AR 376. Wilson made good eye contact, had good interpersonal contact, and showed no evidence of psychomotor agitation. AR 373. His thoughts were coherent and organized, and he appeared to be of at least average intelligence. AR 373-74. His affect was full and animated. His speech was normal. He could perform simple math problems and followed the conversation well. AR 373-74. Previously in September 2008, the psychiatrist

found that Wilson was able to understand, remember and carry out both simple and complex instructions. He was slightly limited in his ability to maintain concentration, persistence or pace, and was minimally limited in all other areas. AR 342-43.

The ALJ articulated specific and legitimate reasons for discounting Dr. Benson's opinions. Wilson argues that the ALJ should have recontacted Dr. Benson to obtain additional evidence. Rejection of a treating physician's opinion does not by itself trigger a duty to contact the physician for more explanation. *McLeod*, 640 F.3d at 885. The ALJ made no finding that the evidence was ambiguous or that the record was inadequate to allow for proper evaluation. *See Mayes*, 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Under these circumstances, the ALJ did not have a duty to recontact the physician. *McLeod*, 640 F.3d at 885 n.3; *Bayliss*, 427 F.3d at 1217. The ALJ did not err.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: March 28, 2012

ALICIA G. ROSENBERG
United States Magistrate Judge